## George Caldwell v. Estate of Jacob Guyer.

1. CONTRACTS—*Proper to be Allowed Against the Estate of a Deceased Person.*—A person placed notes to the amount of $5,500 in the hands of his attorney, with directions to use the proceeds in settling and adjusting a difficulty growing out of the conveyance of land by him, and to have as compensation for his services one-half of whatever sum he could realize from the settlement less than said $5,500, giving to his nephew, the appellant, the other half of the sum which his said attorney might be able to save out of the said notes, as compensation for services rendered by such nephew. It was *held* that the transaction was sufficient upon which to base a claim by the nephew for allowance against the estate of such person.

Claim in Probate.—Appeal from the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded with directions. Opinion filed February 1, 1900. Rehearing denied April 12, 1900.

NEWTON WYETH and JAMES A. CAMERON, attorneys for appellant.

JAMES H. SEDGWICK, attorney for appellee.

MR. PRESIDING JUSTICE CRABTREE delivered the opinion of the court.

Appellant filed his claim in the County Court against the estate of Jacob Guyer, deceased, to recover $950 alleged to be due him under a written contract which appears in the evidence.

The claim was disallowed in the County Court, and the plaintiff appealed the case to the Circuit Court. Upon leave granted he filed an amended claim, adding $25 for items of services appearing in the bill of particulars. A jury was waived and the cause tried by the court, with the result that the claim was allowed as to the items amounting to $25 and rejected as to the $950, and the plaintiff brings the case to this court by appeal, judgment having been entered according to the court's findings.

We have no doubt as to the propriety of the court's action in allowing the $25, the only question being whether the $950 should not also have been allowed.

Without going into specific details, it is sufficient to state, in a general way, that Guyer, as appears by the evidence, in his lifetime had some trouble with one Peck in reference to a 160 acre farm which Guyer had deeded to Peck, as it would seem under a misapprehension as to the effect of certain deeds executed by Guyer to Peck. Dan R. Sheen, an attorney at law, was employed by Guyer to straighten out the matter and obtain a reconveyance of the farm. A written contract was entered into between Guyer and Sheen as to his employment and the compensation to be paid Sheen for his services, but we deem it unnecessary to set it out, as it was abrogated by a later contract between the same parties. The efforts of Sheen to secure a settlement were successful, and he testifies that Guyer and plaintiff came to his office and the former said he was informed that Sheen had about completed the settlement with Peck, and that he, Guyer, thought Sheen was getting a pretty big fee and could afford to be generous in the matter, and that Caldwell had been performing services for him. At this point the court sustained an objection to the further testimony of Mr. Sheen as to what Guyer said about Caldwell's services, but the result of the interview was that a written contract was signed by Guyer, which was as follows:

" In the place of any agreement heretofore made, I agree as follows :

I have placed in the hands of Dan R. Sheen three notes, being $3,000, signed by James D. Peck, $500, signed by Edward Mansfield, and $2,000 signed by John Shelley, being in all $5,500, and authorize him to deliver as many or as few of them as he sees fit, in the purchase of the 160 acres I deeded to James D. Peck, being the S. W. $\frac{1}{4}$ of section 32–10–6, Peoria county, Ill., he to have as compensation one-half of whatever sum he can realize from such settlement less than said $5,000, and I give to my nephew, George Caldwell, the other half of said amount that he may save out of said $5,500, which I am to pay for the title to said lands, as compensation to said Caldwell for services he has rendered to me.

In addition to performing said services, said Sheen is to settle all matters between said Peck and I, and procure an assignment to me of a lease given by said Peck for two years on said property, his compensation for all said matters to be the amount he may make on said settlement with said Peck.

Sept. 1, 1894.                    Signed,    J. GUYER."

Sheen proceeded with the settlement and by September 3, 1894, had consummated it to the satisfaction of Guyer, and whereby $1,900 was saved out of the $5,500, one-half of which sum of $1,900 was, by the written agreement, to go to Sheen and the other half to Caldwell. Guyer, however, made a settlement with Sheen for $600, and the balance of the securities in the hands of the latter were returned to Guyer and Caldwell got nothing.

The evidence clearly shows that claimant had for many years been performing services for Guyer, the value of which the latter recognized by frequently expressing the intention of buying Caldwell a farm to compensate him therefor. Various farms were looked at by Guyer with this purpose in view, but nothing was done in the way of a purchase. We think the contract with Sheen was made upon a sufficient consideration, and fixed the value of appellant's compensation when the amount saved by Sheen out of the Peck compromise could be ascertained.

Jacob Guyer himself frequently recognized the binding obligation of this contract, as appears from the testimony of his brother, Lazarus Guyer, and his nephew, Edward H. Guyer. The latter testifies that the deceased told him " he owed plaintiff for what the latter had done for him and that he owed him under the settlement with Mr. Sheen, but that he did not want to pay him in money; that he intended to buy him a farm, which would be of some benefit to him." But he never bought plaintiff the farm.

Some evidence was offered on the part of the defendant to show that the mind of Jacob Guyer was impaired by age and his memory defective. No doubt this testimony was introduced for the purpose of attempting to invalidate the contract. We think it was entirely insufficient. While

Mr. Guyer was an old man and no doubt at times forgetful, there is no evidence to show he did not fully understand his business transactions when engaged in them. That he did so when he entered into the contract with Sheen we have no doubt.

On a consideration of the whole record, we think the claim for $950 under the Sheen contract should have been allowed. The judgment will therefore be reversed and the cause remanded to the Circuit Court, with directions to allow the claim for $975 as of the seventh class, and to enter judgment accordingly.

Reversed and remanded with directions.